UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PHILLIP S. C.,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 6:21-cv-01690-AR

OPINION AND ORDER

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Phillip S. C. (his middle and last names omitted for privacy) alleges that the Administrative Law Judge (ALJ) made three errors. First, plaintiff contends that the ALJ improperly rejected subjective testimony of his symptoms about his headaches and neuropathy. Second, he argues that the ALJ erred by discounting the medical opinion of his treating physician, Mark Vanderburgh, M.D. And third, plaintiff argues that the ALJ erred by not

Page 1 – OPINION AND ORDER

considering whether his headaches were per se disabling under Social Security Ruling 19-4p at step three of the ALJ's five-step analysis. As explained below, the court agrees with plaintiff, in part. Accordingly, the Commissioner's decision is reversed and remanded for further proceedings.[1]

## ALJ'S DECISION

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits (DIB), alleging that his disability began on November 2, 2018. (Tr. 13). His claims, which were denied initially and upon reconsideration, were considered by the ALJ at a telephonic hearing on December 17, 2020. In denying plaintiff's DIB application, the ALJ followed the five-step sequential evaluation process.[2] The ALJ determined that plaintiff met the insured status requirements through December 31, 2023, and at step one, that plaintiff has not engaged in substantial gainful activity since November 2, 2018, the alleged onset date. (Tr. 15). At step two, the ALJ determined that plaintiff had four severe impairments: seizure disorder with frontal mass/intracranial structures; neurocognitive disorder; bilateral ulnar neuropathy status post release surgery; and headaches. (Tr. 15). At step three, the ALJ determined that plaintiff's impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 16).

---

[1] This court has jurisdiction under 42 U.S.C. § 405(g) and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that he could perform light work with the following additional limitations: he can only occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; and can frequently reach in all directions and frequently handle and finger bilaterally. (Tr. 18). Additionally, the ALJ found plaintiff must avoid even moderate exposure to work hazards, such as dangerous moving machinery and unprotected heights and can perform simple routine tasks. (Tr. 18). At step four, the ALJ found plaintiff capable of performing his past relevant work as a laminating machine off-bearer. (Tr. 20). The ALJ also determined at step five that, given his age, education, work experience, and RFC, plaintiff could perform the representative occupations of inspector/hand packager, office helper, and tying machine operator. (Tr. 22).

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision if the ALJ applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

# DISCUSSION

**A.    *Plaintiff's Subjective Symptom Testimony***

When evaluating the credibility of a claimant's testimony about subjective pain or symptoms, if the claimant "is not malingering[3] and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that he cannot engage in full-time, competitive employment because of a variety of health conditions, including bilateral neuropathy and chronic daily headaches. At his hearing, plaintiff described the frequency and significance of his headaches and neuropathy. (Tr. 34). He described the headaches as a "two to a five" on a scale of ten, and that "sometimes they could get up to nine and tens." (Tr. 34). To lessen the pain, he testified that he tried to avoid reading or looking at screens, and rested. (Tr. 35). Plaintiff testified that he tried three or four medications that did not help, and that his treating physician referred him to a headache specialist. (Tr. 36). Plaintiff described the neuropathy symptoms as if his hands and arms were "asleep," "dead," and "tingly," like "when you hit your funny bone." (Tr. 37). Plaintiff had surgery to address the neuropathy on his right arm, and said it was helpful and that he expected continued improvement. (Tr. 37). With his non-dominant left hand, he testified that he could

---

[3]    There is no evidence of malingering in the record.

Page 4 – OPINION AND ORDER

hold and move things, but not for a very long time. (Tr. 38-39). Plaintiff estimated that he could lift twenty-five pounds for one hour in a workday. (Tr. 37).

Plaintiff asserts that the ALJ erred for two primary reasons.[4] (Pl. Br. 6-9, ECF No. 19). First, he argues that the ALJ erred by considering his headache treatment conservative and discounting his testimony about headache pain. (*Id.* at 6). Second, plaintiff argues that the ALJ erred by discounting testimony about the severity and duration of symptoms from his bilateral neuropathy post-surgery. (*Id.* at 8). As discussed below, the ALJ's error in evaluating plaintiff's subjective symptom testimony is harmful.

1. **Headaches**

First, the ALJ erred by discounting plaintiff's testimony about the severity of his headaches without clear and convincing reasons for doing so. The ALJ discounted plaintiff's headache testimony because he "has received some treatment," and "has utilizes [*sic*] over-the-counter medication, such as ibuprofen, as needed." (Tr. 19). In some instances, use of conservative treatment such as over-the-counter medication is "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). In *Parra*, for example, the Ninth Circuit concluded that the ALJ supported her decision with clear and convincing reasons because she pointed to "specific evidence in the record," such as lab tests, contradicting subjective pain testimony and a history of over-the-counter pain medication being used to treat the plaintiff's pain. *Id.* Here, by contrast, the ALJ failed to support his rejection of plaintiff's testimony with a clear and convincing reason,

---

[4] On Reply, plaintiff concedes that the ALJ's finding that "his seizures are controlled with medications," was not error, but "a proper reason for discrediting Plaintiff's seizure complaints." (Reply Br. at 4, ECF No. 24).

Page 5 – OPINION AND ORDER

supported by substantial evidence. Principally, the ALJ did not accurately identify the medications plaintiff used to treat his headaches. At the hearing, plaintiff testified ibuprofen was "for…my hands and not for headaches." (Tr. 36). Instead, plaintiff testified he tried "three or four different type[s] of medications [for his headaches] and none of them seem[ed] to work." (Tr. 36). None of these medications is "over-the-counter." (Tr. 296, 297, 319, 322, 347, 349, 402) (noting plaintiff tried Fioricet, amitriptyline, Verapamil, and gabapentin to manage headache symptoms). A regimen of prescription medications is not fairly characterized as "conservative" treatment. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (holding ALJ erred in rejecting claimant's testimony based on receiving conservative treatment that included assorted prescription medications). The ALJ ignored substantial evidence in the record and plaintiff's symptom testimony itself to find that his allegations of disabling headaches were undermined by having "some treatment" and taking "over-the-counter" medications. Consequently, this rationale fails to provide clear and convincing support to reject plaintiff's testimony regarding the severity of his headaches.[5]

The Commissioner attempts to bolster the ALJ's rationale by arguing that plaintiff was referred to a headache specialist, but failed to attend. (Resp. at 3-4, ECF No. 20 (citing Tr. 36)). Even if this were a convincing reason, the court considers only those reasons relied upon by the ALJ, not defendant's *post hoc* rationalizations. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

---

[5] Because the ALJ did not provide a specific, clear and convincing reason to discount plaintiff's subjective symptom testimony, the ALJ also failed to incorporate all plaintiff's limitations into the RFC. Consequently, the questions posed to the vocational expert were not based on substantial evidence and are of no evidentiary value. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the plaintiff can perform jobs in the national economy.").

2003) (stating the court "is constrained to review the reasons the ALJ asserts"). Because that rationale was not part of the ALJ's analysis, the court need not reach whether it would be a sufficiently clear and convincing reason to discount plaintiff's testimony concerning the severity of his headaches.

   2. **Neuropathy**

Plaintiff also argues that the ALJ erred by discounting his testimony concerning the severity of tingling, numbness, and pain in his arms. When considering a claimant's statements about the intensity, persistence, and limiting effects of symptoms, the ALJ may consider whether the claimant's statements are consistent with objective medical evidence and other statements a claimant makes. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir. 2008); 20 C.F.R. § 404.1529(c)(2); SSR 16-3p, available at 2017 WL 5180304, at *6. Plaintiff acknowledges that he had cubital and ulnar nerve transposition surgery on his right arm in October 2020 and that he reported "significant improvement" in his numbness and tingling in his right hand post-operatively. (Pl.'s Br. at 8). Plaintiff argues that despite improvement, he continues to have pain and weakness on his right side, including "a lot of elbow pain that can spike up to a 8-9/10 but at times can be as low as a 2-3/10." (Pl. Br. at 8 (citing Tr. 405)). Plaintiff also contends that he continues to experience severe symptoms in his left arm and hand. In plaintiff's view, the ALJ erred in rejecting his testimony about his neuropathy. The court disagrees.

At the hearing, plaintiff testified that he could do moderate activity with his right hand, like daily chores, and when the ALJ inquired about his limitations with his left arm, he stated that he could "hold things," and "move things." (Tr. 38). The ALJ discussed plaintiff's surgical treatment records. (Tr. 19). Three weeks after surgery, plaintiff reported "[n]o more tingling in

Page 7 – OPINION AND ORDER

fingers, just some residual at the elbow at times;" and that his range of motion had improved significantly. (Tr. 407, 411). Although plaintiff highlights that he was reporting spiking elbow pain at an 8-9/10, he reported that level of pain four weeks after surgery. (Tr. 405). As the ALJ correctly observed, at five and a half weeks after surgery, plaintiff reported "significant improvement" on the right, that his left arm improved "a little bit," and that the surgeon informed him that "numbness and tingling will likely continue to improve over time." (Tr. 19) (citing 411, 413). That track record of improvement and evidence of plaintiff's mild symptoms provide ample support for the ALJ's conclusion that plaintiff's neuropathy causes "some limitations…such as handling and fingering," but that "through treatment his condition has improved." (Tr. 19). The ALJ's rationale for discounting plaintiff's testimony about the severity of his neuropathy is backed by substantial evidence, and the ALJ did not err in his evaluation of that evidence.

In summary, the court finds that only one of the ALJ's two rationales for discounting plaintiff's subjective symptom testimony is supported by substantial evidence. Thus, the court must assess whether the ALJ's error is harmless. *Carmickle*, 533 F.3d at 1162 (requiring court to consider whether an ALJ's credibility determination remains "legally valid" where some, but not all, of the ALJ's reasons are invalidated). As will be discussed below, plaintiff's treating physician indicated that his chronic headaches are his primary limitation. Thus, the ALJ's error in evaluating plaintiff's chronic headache evidence may not be inconsequential to the ultimate nondisability finding. Therefore, on this record, the court concludes that the ALJ's adequately supported rationale – that plaintiff's testimony about the severity of his neuropathy is inconsistent with his statements made to his medical provider – fails to amount to clear and

convincing support for the entire rejection of his subjective symptom testimony. The ALJ has committed harmful error.

**B.      *Dr. Vanderburgh's Medical Opinion***

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* §§ 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-

Page 9 – OPINION AND ORDER

supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

Plaintiff argues that the ALJ improperly found Dr. Vanderburgh's opinion unpersuasive. Dr. Vanderburgh was plaintiff's primary care physician after June 28, 2016, and evaluated plaintiff twice after his alleged onset date for symptoms related to seizures, headaches, and extremity pain and numbness. (Tr. 316-32; 395-404). In November 2020, Dr. Vanderburgh completed a questionnaire in connection with plaintiff's disability claim, in which he opined plaintiff was only capable of carrying under 10 pounds occasionally; that his headaches made him incapable of concentration or decision making; and that this impairments—specifically his headaches—rendered him incapable of working a full 8-hour day or performing simple work tasks "90% or more" of the time. (Tr. 425, 427).

The ALJ erred in finding Dr. Vanderburgh's opinion unpersuasive because he did not consider the supportability or consistency of Dr. Vanderburgh's headache-based conclusions. (Tr. 20). Supportability and consistency are the two most important factors in assessing the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ specifically found Dr. Vanderburgh's opinion unpersuasive because it was "not totally consistent with the record which shows improvement following surgery to his neuropathy and his seizure disorder well-

Page 10 – OPINION AND ORDER

controlled with medication." (Tr. 20). The ALJ cites the neurocognitive evaluation conducted by Dr. Paul Stoltzfus and treatment notes by Cris Alba following plaintiff's ulnar nerve surgery, which do not address plaintiff's headache symptoms. (Tr. 285-93, 404-23). However, the ALJ does not identify which examination findings or treatment notes allegedly contradict Dr. Vanderburgh's opinion and provides no explanation for why his opinion about plaintiff's headaches is unpersuasive. The ALJ's summary rejection of Dr. Vanderburgh's opinion deprives the court of its ability to conduct a meaningful review. *Brown-Hunter*, 806 F.3d at 492.

The ALJ also stated that Dr. Vanderburgh's opinion had "little explanation for the conclusion offered" and did not give "function-by-function limitations." (Tr. 20). The ALJ's analysis fails to explain how the consistency and supportability factors were considered. There is no requirement that a doctor's opinion offer "function-by-function limitations" for it to be well-supported. 20 C.F.R. § 404.1520c(c)(1). The opinion need only offer sufficient explanation and be backed up by objective medical evidence, which it was in this case. *See id.* Dr. Vanderburgh explained that plaintiff's headaches are the primary cause of his limited ability to sit, stand, walk, lift and carry. (Tr. 425). He explained that headaches cause nausea and interfere with concentration and plaintiff's decision-making ability. (Tr. 427). He further opined that plaintiff's absenteeism would be caused by headaches. (Tr. 427). And these opinions were consistent with the treatment records showing that Plaintiff's headaches were resistant to treatment. (Tr. 296, 297, 319, 322, 347, 349, 402). Because the ALJ did not properly consider the consistency or supportability of Dr. Vanderburgh's opinion regarding plaintiff's headaches, the ALJ erred.

C.   *Headaches at Step 3*

The ALJ found that plaintiff's seizure disorder did not meet the requisite number of seizure activity despite treatment for Listing 11.02. Plaintiff on review argues that the ALJ erred

Page 11 – OPINION AND ORDER

by failing to consider whether his *headaches* were disabling at step three because it is equivalent to seizure disorder under listing 11.02. Plaintiff points to Social Security Ruling (SSR) 19-4p, which provides that a headache disorder may equal a listing and that listing 11.02 is the most closely analogous listed impairment for a medically determinable impairment (MDI). (Pl. Br. at 12, Reply Br. at 1-4; SSR 19-4p). That is, given that SSR 19-4p recognizes that a "person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and that we [SSA] may find that his or her MDIs medically equals the listing," the ALJ erred in failing to consider the equivalency of his headache disorder to listing 11.02. The Commissioner responds that plaintiff never argued to the ALJ that his headache disorder equaled listing 11.02 and that the ALJ was not obligated to consider *sua sponte* medical equivalency, citing *Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020).

The court agrees with plaintiff. Although the Ninth Circuit stated in *Ford* that the ALJ did not err because it "did not have an obligation to discuss medical equivalency sua sponte," that court was addressing the ALJ's obligation to consider whether a *combination* of conditions met an equivalency. *Id.* at 1157 (An "'ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.'" (quoting *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)).). To the extent that the Ninth Circuit has imposed a preservation requirement on claimants with respect to Step 3 equivalency determinations for a combination of conditions, neither *Ford* nor *Burch* stand for the proposition that such a requirement extends to the equivalency determination at issue here—whether a headache disorder is equivalent to Listing 11.02 for seizure disorders in light of SSR 19-4p, which

Page 12 – OPINION AND ORDER

expressly sets out their equivalency.

Here, plaintiff did present evidence of equivalency. He testified that he has chronic daily headaches that sometimes reach an intensity of eight to ten out of a possible ten, (Tr. 34); he suffered a traumatic brain injury at age 13 that resulted in a seizure disorder, neurocognitive disorder, and chronic daily headaches, (Tr. 296, 300, 302, 304, 319, 322, 324, 326, 348, 402); he presented evidence of two headache-causing hyperattenuating brain lesions, (Tr. 271); plaintiff's primary care provider state that his "constant" daily occurring headaches are his main issue, (Tr. 426); and there is evidence that he has prostrating non-migraine headache pain more than once a month in frequency that interfere with decision-making and concentration (affecting 90% or more of a workday) (Tr. 426-27). Because SSR 19-4p sets out that Paragraph B of listing 11.02 requires severe headaches occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment and Paragraph D of listing 11.02 requires severe headaches occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning, plaintiff presented enough evidence to trigger that evaluation. The ALJ thus erred at Step 3 when it only considered whether plaintiff's neurocognitive disorder met listing 11.02, and failed to also considerwhether his headache disorder was equivalent to listing 11.02.

The Commissioner further argues that, despite the ALJ's failure to consider his headaches under listing 11.02 at Step 3,the ALJ "paid close attention" to plaintiff's headaches, including his subjective symptom testimony, and therefore provided a sufficient rationale for a reviewing court to find a basis for that plaintiff's headaches were not equivalent to listing 11.02. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (stating that an ALJ must "discuss and evaluate the evidence that supports his or her conclusion" but need not do so under the heading

Page 13 – OPINION AND ORDER

'Findings.'"); *Kruchek v. Barnhart*, 125 F. App'x 825, 827 (9th Cir. 2005); *see also Lewis*, 236 F.3d at 512-13 (holding the ALJ did not err at step three by "failing to elaborate on his determination that [the claimant's allegedly disabling physical and mental impairments] did not meet or equal" a listing where the ALJ otherwise "discussed and evaluated evidence supporting his conclusion"). However, even if the ALJ's discussion of plaintiff's headaches outside of the Step 3 discussion section of the decision were sufficient for review, that discussion included findings about plaintiff's subjective symptom testimony and Dr. Vanderburgh's opinion that were lacking in substantial evidence and cannot be a basis for concluding that the ALJ did not err on this issue.

### D.     *Remand for Further Proceedings*

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard. Applying the requisite standard, for the reasons set forth below, the Court finds that the record is not free of conflict and ambiguity and therefore must be remanded for further proceedings.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed, and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Strauss*, 635 F.3d at 1138.

Page 14 – OPINION AND ORDER

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the record is not fully developed as to plaintiff's headaches. Remand for further proceedings is appropriate because the ALJ failed to adequately explain why he discounted plaintiff's headache testimony, found Dr. Vanderburgh's opinion unpersuasive, and did not consider whether plaintiff's headaches were equivalent to listing 11.02. Outstanding issues in the record therefore remain, including weighing plaintiff's improperly discounted testimony with the other evidence. which the ALJ must resolve before a disability determination, See *Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings."); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability

can be made, including . . . weighing [the claimant's improperly discounted] testimony with the other evidence.").

Without a fully developed and unambiguous record, the court will not credit the discounted testimony as true, and the appropriate remedy is to remand to the Commissioner for further proceedings. On remand, the ALJ must (1) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it; (2) accept Dr. Vanderburgh's opinion or provide legally sufficient reasons for rejecting it; (3) consider whether plaintiff's headaches are equivalent to listing 11.02 at step three; (4) review any new evidence; and (5) offer plaintiff a new hearing, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony, if necessary.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for further proceedings.

IT IS SO ORDERED.

DATED April 12, 2023.

_____<br>
JEFF ARMISTEAD<br>
United States Magistrate Judge